UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                   :

CHRISTINA BETANCOURT,            :
                                   :

            Plaintiff,       :    23-CV-_____ (    )
                                   :

          -against-        :

                                   :    **<u>NOTICE OF REMOVAL</u>**

CARDINAL FINANCIAL COMPANY, LP  :
                                   :

          Defendant.    :
                                   :
--------------------------------------------------------------x

Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant Cardinal Financial Company, Limited Partnership ("Cardinal Financial"), by and through its attorneys, Cerasia Law LLC, files this Notice of Removal with respect to the case of *Christina Betancourt v. Cardinal Financial Company, LP*, Index No. 600436/2023, from the Supreme Court of the State of New York, Suffolk County.

In further support of this Notice, Cardinal Financial states as follows:

1. On January 6, 2023, plaintiff Christina Betancourt filed a Summons with Notice in the Supreme Court of the State of New York, Suffolk County (the "State Court"). A true and correct copy of the Summons with Notice is attached hereto as Exhibit A. On February 16, 2023, Betancourt served the Summons with Notice upon Cardinal Financial.

2. On February 23, 2023, Cardinal Financial acknowledged service and filed a Demand for Complaint in the State Court.

3. On March 14, 2023, Betancourt filed her Complaint in the State Court and served the Complaint upon Cardinal Financial through electronic filing. A true and correct copy of the Complaint is attached hereto as Exhibit B.

4.      Cardinal Financial is unaware of service of process on the two individual defendants who are identified in paragraphs 7 and 8 of the Complaint, but are not listed in the caption of the Complaint.

5.      This Notice of Removal has been timely filed within 30 days after Cardinal Financial was served with the Summons with Notice, which generally identified alleged violations of federal statutes. (Ex. A, p. 1.)

6.      The Complaint includes three causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Ex. B, ¶¶ 38-53.) In the First Cause of Action, Betancourt alleges that Cardinal Financial "discriminated against Plaintiff because of her sex and gender in violation of Title VII." (*Id*, ¶ 39.) In the Second Cause of Action, she alleges that Cardinal Financial "discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated white employee[s] who do not have associations with people of color, and by subjecting her to disparate terms and conditions of employment, including termination and a hostile work environment, and other forms of discrimination on the basis of her race and association with people of color in violation of …Title VII." (*Id*., ¶ 44.) In the Third Cause of Action, she alleges that "[b]y reason of [Cardinal Financial's] retaliation, Plaintiff is entitled to all remedies available for violations of …Title VII." (*Id*., ¶ 53.)

7.      The Complaint also includes two causes of action under 42 U.S.C. § 1981 ("Section 1981"). (Ex. B, ¶¶ 42-53.) In the Second Cause of Action, Betancourt alleges that Cardinal Financial "discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated white employee[s] who do not have associations with people of color, and by subjecting her to disparate terms and conditions of employment, including termination and a hostile work environment, and other forms of discrimination on the basis of her race and

association with people of color in violation of 42 U.S.C. § 1981." (*Id*., ¶ 44.) In the Third Cause of Action, she alleges that "[b]y reason of [Cardinal Financial's] retaliation, Plaintiff is entitled to all remedies available for violations of 42 U.S.C. § 1981." (*Id*., ¶ 53.)

8. This Court has federal question jurisdiction over Betancourt's Title VII and Section 1981 claims, pursuant to 28 U.S.C. § 1331. The Court also may exercise supplemental jurisdiction over the state law claims in the Complaint, pursuant to 28 U.S.C. § 1367.

9. This District embraces the State Court in Suffolk County, where this lawsuit was originally filed. Removal to this District is therefore proper. 28 U.S.C. §§ 112(c) & 1441(a).

10. Cardinal Financial will serve copies of this Notice of Removal upon Betancourt and file a copy with the Clerk of the State Court to effect removal of this action to this Court pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Cardinal Financial respectfully requests that this Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Supreme Court of New York, Suffolk County, to this Court.

Dated: Roseland, New Jersey
March 20, 2023

Respectfully submitted,

CERASIA LAW LLC

By s/ Edward Cerasia II
Edward Cerasia II
Alison L. Tomasco
101 Eisenhower Parkway, Suite 300
Roseland, New Jersey 07068
646.525.4235
ed@cdemploymentlaw.com
alison@cdemploymentlaw.com

Attorneys for Defendant
*Cardinal Financial Company, Limited
Partnership*

**CERTIFICATE OF SERVICE**

I, Alison L. Tomasco, hereby certify that on March 20, 2023, I caused the within Notice of

Removal to be submitted by electronic filing to the Clerk of the Court for the U.S. District Court

for the Eastern District of New York, and a copy of the within pleading to be served by email,

upon the following counsel of record for the plaintiff:

> Megan S. Goddard
> Frances Codd Slusarz
> Goddard Law PLLC
> 39 Broadway, Suite 1540
> New York, NY 10006
> megan@goddardlawnyc.com
> frances@goddardlawnyc.com

> s/ Alison L. Tomasco
> Alison L. Tomasco, Esq.

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**
-----------------------------------------------------------------x

CHRISTINA BETANCOURT,

                          **Plaintiff,**

       -against -

CARDINAL FINANCIAL COMPANY,
LIMITED PARTNERSHIP, PHIL REILLY,
and CRYSTAL MORGAN,

                     **Defendants.**
-----------------------------------------------------------------x

Index No.:

**SUMMONS WITH NOTICE**

**VENUE**
Suffolk County

**BASIS OF VENUE**
Defendant's Place of
Business, Where the Actions
Complaint of Occurred, and
Plaintiff's Place of Residence

**TO THE ABOVE-NAMED DEFENDANT(S):**

    **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorney, at the address stated below, a notice of appearance or demand for a complaint.

    If this Summons with Notice was personally served upon you in the State of New York, the notice of appearance or demand for complaint must be served within twenty (20) days after such service of the Summons with Notice, excluding the date of the service. If this Summons with Notice was not personally delivered to you within the State of New York, the notice of appearance or demand for complaint must be served within thirty (30) days after service of this Summons with Notice is completed as provided by law.

    **PLEASE TAKE NOTICE THAT** the nature of this action is employment discrimination on the basis of Plaintiff's gender, sexual harassment, hostile work environment, retaliation, associational race and national origin discrimination, and unequal pay in violation of the 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, the New York State Human Rights Law ("NYSHRL"), and the New York State Equal Pay Act; as well as Breach of Contract; and illegal withholding of commissions in violation of the New York Labor Law ("NYLL").

1

The relief sought is: an amount to be determined at trial but in no event less than Two Million Five Hundred Thousand Dollars ($2,500,000.00) together with attorneys' fees and interest thereon.

**PLEASE TAKE FURTHER NOTICE** that if you do not serve a notice of appearance or demand for a complaint within the applicable time limitation stated above, a judgment will be entered against you, by default, for the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00) together with interest, attorneys' fees and the costs and disbursements of this action.

The action will be heard in the Supreme Court of the State of New York, in and for the County of Suffolk.  The basis for the venue is Defendant's place of business, where the actions complained of occurred, and Plaintiff's place of residence.

**Dated: New York, New York**
       **January 6, 2023**

                       **GODDARD LAW PLLC**
                       *Attorneys for Plaintiff*

**By:**    */s/ Megan S. Goddard*
        **Megan S. Goddard, Esq.**
        **39 Broadway, Suite 1540**
        **New York, New York 10006**
        **(646) 964-1178**
        **Megan@goddardlawnyc.com**

**TO:**   **Cardinal Financial Company LP**
      **41 Pinelawn Road, Suite 100**
      **Melville, NY 11747**

      **Phil Reilly**
      **c/o Cardinal Financial Company LP**
      **41 Pinelawn Road, Suite 100**
      **Melville, NY 11747**

2

**Crystal Morgan**
**c/o Cardinal Financial Company LP**
**41 Pinelawn Road, Suite 100**
**Melville, NY 11747**

3

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

———————————————————————x

CHRISTINA BETANCOURT,

                Plaintiff,                   Index No. 600436/2023

    -against-                      COMPLAINT

CARDINAL FINANCIAL COMPANY, LP      Jury Trial Demanded

               Defendant.

———————————————————————x

PLAINTIFF CHRISTINA BETANCOURT ("Plaintiff"), by and through her attorneys, Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff was and is a talented home mortgage loan originator. She makes lasting connections with realtors and has had a great deal of success developing her business based on the relationships she has fostered. She also is a good and decent person, who opposed her employer's practice of offering higher interest rates to people of color. In retaliation for her opposing her employer's racist practices, her employer arbitrarily reduced her commission rate and, ultimately, terminated her employment.

2. All the while, Plaintiff's employer subjected her to sexual harassment and a hostile work environment. Defendant Cardinal Financial Company, LP ("Defendant Cardinal") also subjected Plaintiff to race, associational race, ethnicity, and national origin discrimination, and retaliation both for her professional relationship with a Guyanese realtor and for advocating against the higher interest rates Defendant Cardinal quoted to her Guyanese and Hispanic/Spanish-speaking clients.

## PARTIES

3.      Plaintiff resides in Babylon, New York, which is in Suffolk County.

4.      At all relevant times herein, upon information and belief, Defendant Cardinal has been a mortgage lending company licensed and registered to do business under the laws of the State of New York. Defendant Cardinal has more than 15 employees. Upon information and belief, Defendant Cardinal's headquarters are located at 3701 Arco Corporate Drive, Ste. 200, Charlotte, NC, 28273.

5.      At all times relevant herein, Defendant Cardinal was Plaintiff's "employer" within the meaning of all federal, state, and local laws.

6.      At all relevant times herein, Plaintiff was an "employee" of Defendant Cardinal and worked out of Defendant Cardinal's office located at 41 Pinelawn Rd., Ste. 100, Melville, New York, which is also in Suffolk County.

7.      Defendant PHIL REILLY ("Defendant Supervisor Reilly"), a white male, was, at all relevant times, Defendant Cardinal's Branch Manager in Melville, New York, and Plaintiff's supervisor. In those capacities, Defendant Supervisor Reilly controlled the terms and conditions of Plaintiff's employment. Defendant Supervisor Reilly was Plaintiff's "employer" under all relevant laws.

8.      Defendant CRYSTAL MORGAN ("Defendant HR Manager Morgan"), a white female, was, at all relevant times, the "People Relations Manager" at Defendant Cardinal. In that capacity, Defendant HR Manager Morgan was Plaintiff's supervisor and controlled the terms and conditions of Plaintiff's employment. Defendant Supervisor Reilly was Plaintiff's "employer" under all relevant laws.

2

## FACTUAL BACKGROUND

### Plaintiff Is Hired as an Originator and Quickly Climbs the Corporate Ladder

9.      In or around April 2019, Plaintiff was hired by Defendant as a Loan Originator in its Melville, New York office. Plaintiff's job responsibilities as a Loan Originator included originating residential home loans for purchases and refinances through Defendant Cardinal.

10.     Plaintiff was offered this position by Branch Manager Defendant Supervisor Reilly. Plaintiff originally met Defendant Supervisor Reilly when they both worked at United Mortgage Corporation ("United") in 2018. Although Plaintiff left her employment at United to purse a position with Chase Bank, she was considering returning to United in or around April 2019. When Defendant Supervisor Reilly found out Plaintiff was looking to go back to United, he told her that he was leaving United for Defendant Cardinal and wanted her to come with him.

11.     Plaintiff accepted Defendant Supervisor Reilly's job offer to work for Defendant Cardinal because Defendant Supervisor Reilly's expertise was in structuring loans, whereas her supervisor at United main knowledge was reverse mortgages. Plaintiff did not originate reverse mortgages and considered herself more likely to be successful with a supervisor whose expertise matched her business.

12.     Plaintiff was happy at Defendant Cardinal throughout her initial employment in 2019, and felt like she had finally found a bank that was reputable, competitive, and provided a support staff with which she could grow her business. Defendant Supervisor Reilly and Plaintiff worked as a team: she did outside sales since she possessed the ability to attract and retain referral partners; and he assisted with back-end processing to free her up to continue to grow and expand her business at Defendant Cardinal.

3

13. This positive experience working at Defendant Cardinal lasted less than a year. It drastically changed in March 2020, when Defendant Cardinal's employees started working from home due to the Covid-19 pandemic.

14. During the remainder of 2020, in an uncertain time, Defendant's employees were forced to conduct business remotely, and what would be have been considered personal time/time off was being used for phone calls, Zoom meetings, and different virtual attempts to keep business moving forward. Defendant Supervisor Reilly began calling Plaintiff every day, multiple times a day, and he only worked on her loans.

15. As a friendly salesperson who appreciated the help Defendant Supervisor Reilly brought to her business, and wanting to appease him, Plaintiff would always try and answer every call from Defendant Supervisor Reilly no matter the day, time, or frequency. She found herself participating in platonic discussions with Defendant Supervisor Reilly about family and friends, and how they were holding up during the pandemic.

16. Plaintiff's friends, family, and work colleagues witnessed the disturbing frequency of Defendant Supervisor Reilly's calls to her and would comment on it, but Plaintiff initially brushed off their concerns as she wanted to maintain a positive working relationship with Defendant Supervisor Reilly.

17. The constant calls from Defendant Supervisor Reilly and discussions about Plaintiff's personal life continued into 2021, and escalated into comments and behavior that made Plaintiff feel sexually harassed, unsafe, and unable to perform her job duties.

18. In or around May 2021, Defendant Supervisor Reilly began accusing Plaintiff of "hooking up" with male realtors/business partners to win their business.

4

19.     During one specific occasion in or around May 2021, Defendant Supervisor Reilly accused Plaintiff of sleeping with Paul Cecil ("Cecil"), a Guyanese realtor with whom Plaintiff conducted business.

20.     To Plaintiff's disgust, Defendant Supervisor Reilly warned Plaintiff that she and Cecil would have "Oreo babies," which Plaintiff understood to be a reference to her blonde hair and fair skin in comparison with Cecil's dark complexion.

21.     On occasion, and to Plaintiff's disgust, Defendant Supervisor Reilly would also use the "N-word" when referring to Cecil, and make comments to Plaintiff like, "Aren't you embarrassed that people see this tall blonde woman with this Guyanese guy?"

22.     Plaintiff was repulsed by Defendant Supervisor Reilly's racism towards her Guyanese business partner and the harassing comments he made about their professional working relationship, which had brought in a lot of successful business for Plaintiff.

23.     In or around May 2021, Defendant Supervisor Reilly's casual racism escalated into fraudulent and illegal rate hikes for Plaintiff's clients, who were mostly Guyanese or Hispanic/Spanish-speakers. This practice was not exclusive to Defendant Supervisor Reilly, and upon information and belief, other branch managers at Defendant Cardinal would manipulate the rates to charge minority clients a higher interest rate and make a higher commission for themselves.

24.     This racist rate manipulation harmed Plaintiff's business by making her loan offers less competitive. When she complained to Defendant Supervisor Reilly about it, he became angered and dismissive, and questioned why Plaintiff even knew the rates other lending institutions were offering. This confused Plaintiff, as this information about Defendant Cardinal's competitors was not only public knowledge but was essential to doing her job effectively.

5

25. By May 2021, Plaintiff was not only suffering from Defendant Supervisor Reilly's racist actions, but also his ongoing sexual harassment, which had escalated beyond his accusations of her having affairs with colleagues to sharing unwelcome information about his own sex life. For example, during one interaction with Defendant Supervisor Reilly, he disclosed he had just finished having sex on the hood of a car with an attractive young woman.

26. Further, Defendant Supervisor Reilly sent Plaintiff photos of the Tinder profile of the woman from this alleged encounter. Plaintiff was repulsed and confused, but she needed to maintain her working relationship with Defendant Supervisor Riley to get answers about her loans in process. Consequently, she chose not to address Defendant Supervisor Reilly's lewd, inappropriate, and unwelcome behavior. This was far from the only time Defendant Supervisor Reilly foisted his inappropriate behavior upon Plaintiff

27. Plaintiff's conflict with Defendant Supervisor Reilly came to a head in or around late June 2021, when Plaintiff was with one of her top referral agents, Anthony Camardella ("Camardella"). Plaintiff had done business with Carmardella for 8 years. Camardella witnessed Plaintiff's phone ringing with countless calls from Defendant Supervisor Reilly within a period of minutes. Camardella then answered her phone himself, and asked Defendant Supervisor Reilly about the unsatisfactory service being provided to Camardella's clients who applied for loans with Defendant Cardinal. Defendant Supervisor Reilly exploded at Camardella's questions, screaming and cursing, and saying he could even "fuck [Camardella's] wife if he felt like it."

28. Plaintiff, who heard this conversation, was mortified. She tried to reason with Defendant Supervisor Reilly after the call, and explain that it is inappropriate to conduct business in that manner.

29. Immediately after this altercation, on or around June 24, 2021, Defendant Supervisor Reilly texted Camardella that he was going to fire Plaintiff. Plaintiff was indeed fired

6

via text from Defendant Supervisor Reilly on July 16, 2021. Defendant Supervisor Reilly gave no reason.

30.     The following business day, July 19, 2021, Plaintiff attempted to get in touch with Defendant's Human Resources ("HR") to find out why she had been terminated by Defendant Supervisor Reilly, especially given that she consistently closed loans and never had a bad review. The woman she spoke to told her that she had been terminated for sharing proprietary information with other banks.

31.     Plaintiff was incredibly confused at this pretextual reason for her termination, given that Defendant Cardinal did not even print rate sheets that she could have given to other banks, and other bank's rates were publicly available for the most part. The HR representative on the phone then gave Plaintiff the email of Sherry Dutton ("Dutton"), another employee in the HR department.

32.     That same afternoon, Plaintiff wrote an email to Dutton describing the sexual harassment, racism, and retaliation she experienced from Defendant Supervisor Reilly.

33.     In or around late July 2021 Plaintiff received a call from Defendant HR Manager Morgan. Defendant HR Manager Morgan asked Plaintiff some questions about Defendant Supervisor Reilly's behavior and the circumstances of her termination, and then finally asked Plaintiff, "What are you looking for?"

34.     Plaintiff responded that she would like to see Defendant Supervisor Reilly terminated for his behavior. She also demanded payment of her full commission from a recent deal, amounting to around $2,500. Previously, Defendant Supervisor Reilly announced that he was taking away half a percentage point of her commission for no reason. Plaintiff sent the text Defendant HR Manager Morgan. Inexplicably, Defendant Cardinal replied that it could not prove that Plaintiff did not receive the full commission, so it was not paying her the outstanding

7

commission. Defendant Cardinal, of course, had both the records of the deal and the records of what it paid her, so it most certainly knew it did not pay her in full.

35.     In or around August 2021, Plaintiff received another call from Defendant HR Manager Morgan, who said she had "great news." Defendant HR Manager Morgan explained that the money legally owed to Plaintiff under her contract would be given as a bonus, and she would receive a check as soon as she electronically signed some documents.

36.     Plaintiff received a release via DocuSign on or around August 31, 2021, and was astonished to find that Defendant was making receipt of her legally-owed commission contingent upon her signing a document releasing the company from all legal liability related to her employment. Plaintiff was particularly disturbed that Defendant would send this document *after* she complained about gender and race discrimination, and retaliation to Human Resources.

37.     Plaintiff did not sign the legal document and to date has not received the approximately $2,500 in commission she is legally owed.

**AS AND FOR THE FIRST CAUSE OF ACTION**
**(Sex and Gender Discrimination in Violation of Title VII and the NYSHRL)**
**Against All Defendants**

38.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

39.     Defendants discriminated against Plaintiff because of her sex and gender in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law. Plaintiff has suffered both disparate impact and disparate treatment as a result of Defendants' wrongful conduct. Moreover, Plaintiff has endured a hostile work environment.

40.     Defendants conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

8

41.     By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of Title VII and the NYSHRL. Plaintiff shall seek attorney's fees and punitive damages. Plaintiff has been damaged in the sum of no less than $1,500,000

**AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION**
**(Race Discrimination in Violation of 42 U.S.C. § 1981, Title VII, and the NYSHRL)**
**Against All Defendants**

42.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

43.     Defendants have discriminated against Plaintiff in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the New York State Human Rights Law by subjecting her to different treatment because of her race and because of her association with a people of color. Plaintiff has suffered both disparate impact and disparate treatment as a result of Defendants' wrongful conduct, as well as a hostile work environment.

44.     Defendants have discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated white employee who do not have associations with people of color, and by subjecting her to disparate terms and conditions of employment, including termination and a hostile work environment, and other forms of discrimination on the basis of her race and association with people of color in violation of 42 U.S.C. § 1981, Title VII, and the NYSHRL.

45.     The conduct of Defendants was intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

46.     By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of 42 U.S.C. § 1981, Title VII, and the NYSHRL.

9

47. As a result of Defendants' violations of 42 U.S.C. § 1981, Title VII, and the NYSHRL, Plaintiff has been damaged in an amount to be determined at trial, no less than $1,500,000.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. § 1981, Title VII, and the NYSHRL)
### Against All Defendants

48. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

49. Plaintiff reported to Defendants about their discriminatory interest rate practices for people of color.

50. In retaliation, Defendants subjected Plaintiff to a series of adverse employment actions including, but not limited to, subjecting Plaintiff to a hostile work environment, termination, and other forms of retaliation.

51. Defendants conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff.

52. As a result of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

53. By reason of Defendants retaliation, Plaintiff is entitled to all remedies available for violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and the New York State Human Rights Law as to Defendants. Plaintiff shall seek attorney's fees and punitive damages. Plaintiff has been damaged in the sum of no less than $1,500,000

10

**AND FOR THE FOURTH CAUSE OF ACTION**
**(Aiding and abetting discrimination in Violation of the New York State**
**Human Rights Law and the New York City Human Rights Law)**
**Against All Defendants**

54.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

55.     Defendant Supervisor Reilly and Defendant HR Manager Morgan acted to aid and abet the discrimination and retaliation complained of herein, in violation of the NYSHRL.

56.     As a direct and proximate result of Defendant Supervisor Reilly's and Defendant HR Manager Morgan's actions, Plaintiff has suffered and continues to suffer damages including loss of pay and benefits and severe mental anguish and emotional distress.

57.     Defendant Supervisor Reilly and Defendant HR Manager Morgan acted intentionally and with malice and/or reckless indifference to Plaintiff's state-law protected rights, entitling Plaintiff to punitive damages.

58.     Plaintiff will continue to suffer these damages and until the Court grants all of the relief which she is entitled that is requested herein.

59.     As a result of Defendant's violation of the NYSHRL, Plaintiff has been damaged in the sum of no less than $1,500,000.

**AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unequal Pay in Violation of the New York Equal Pay Act against All Defendants)**
**Against All Defendants**

60.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

61.     Defendants violated the right of Plaintiff to be paid the same as male employees performing equal or substantially similar work in violation of the New York Labor Law § 194.

62.     Defendants were aware of their unfair pay practices, but did not rectify or investigate those unlawful pay practices.

11

63. Defendants' violations of New York Equal Pay laws were therefore willful, entitling plaintiff to lost wages, statutory liquidated damages, and punitive damages.

**AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION**
**(Unlawful Wage Deductions in Violation of NYLL § 193)**
**Against All Defendants**

64. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

65. By making deductions from Plaintiff's pay that were not authorized by law, not authorized by Plaintiff, and not for Plaintiff's benefit, Defendants violated New York Labor Law § 193.

66. Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their actions were in compliance with the law within the meaning of New York Labor Law §§ 198 and 663.

67. As a result of Defendants' violation, Plaintiff suffered economic damages.

68. Under the New York Labor Law, Plaintiff is entitled to recover her economic damages, statutory liquidated damages, prejudgment interest, and attorneys' fees.

69. New York Labor Law § 198(2) provides that this remedy may be enforced simultaneously or consecutively with other remedies under Article 6 of the New York Labor Law.

**AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION**
**(Failure to Pay Commissions When Due in Violation of NYLL § 191-C)**
**Against All Defendants**

70. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

12

71. Defendants terminated Plaintiff's employment on July 16, 2021, but failed to pay all due and owing commissions within five business days thereof, in violation of New York Labor Law § 191-C(1).

72. Under New York Labor Law § 191-C(3), Plaintiff is entitled to recover double damages, attorneys' fees, and costs.

### AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION
#### (Breach of Contract)

73. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

74. Plaintiff and Defendants were party to a contract pursuant to which Plaintiff agreed to originate loans for Defendant Cardinal, and Defendant Cardinal agreed to pay Plaintiff a specific percentage of the loan as a commission (the "Contract").

75. Plaintiff fully performed under the Contract.

76. Defendants refuse to pay Plaintiff the agreed-upon commission for the loans she originated.

77. As a consequence of Defendants' breach of the Contract, Plaintiff has suffered damages.

### JURY DEMAND

Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory damages, mental pain and suffering damages, statutory liquidated damages, and punitive damages, as well as the costs and disbursements of this action, including reasonable attorneys'

13

fees incurred in pursuing these claims, together with such other and further relief as this court

deems equitable, proper, and just.

Dated:  New York, New York
        March 14, 2023

                                                Respectfully submitted,

                                                GODDARD LAW PLLC
                                                Attorneys for Plaintiff

                                                By: /s/ Megan S. Goddard
                                                Megan S. Goddard
                                                Frances Codd Slusarz
                                                39 Broadway, Suite 1540
                                                New York, NY 10006
                                                Office: (646) 964-1178
                                                Fax: (212) 473-8705
                                                megan@goddardlawnyc.com
                                                frances@goddardlawnyc.com

CERASIA LAW LLC
Edward Cerasia II
Alison L. Tomasco
101 Eisenhower Parkway
Suite 300
Roseland, New Jersey 07068
646.525.4231
ed@cdemploymentlaw.com
alison@cdemploymentlaw.com
Attorneys for Defendant
*Cardinal Financial Company, Limited Partnership*

14